CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 2 3 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| RANDALL E. BRICKEY, ) | |
| ) | Civil Action No. 1:13CV00073 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| ) | By: Hon. Glen E. Conrad |
| ROBB HALL, et al., ) | Chief United States District Judge |
| ) | |
| Defendants. ) | |

This case is presently before the court on the defendants' motion to dismiss the plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the defendants' motion to dismiss will be granted in part and denied in part.

## Factual and Procedural Background

The following facts, taken from the plaintiff's amended complaint, documents incorporated into the complaint by reference, and public documents of which the court may take judicial notice, are accepted as true for purposes of the motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011).

The plaintiff, Mr. Randall Brickey, served as a police officer in Saltville, Virginia from December 1, 2006 until May 21, 2012, when he was terminated. In early 2012, Brickey decided to run for an elected position on the Town Council. Defendant Hall, the Chief of Police, advised Brickey that "there would be no problem" with his running for office. Compl. ¶ 13. In late March, 2012, the local newspapers asked all candidates for Town Council to submit responses to a set of general questions. See Pl.'s Resp. Br. Ex. F ("What do you see as the town's greatest

needs?"); id. ("Motivation for seeking office/why should the voters choose you?"); see also Pl.'s Resp. Br. Ex. E ("What do you see as needs in your town that can be addressed by its elected leaders, and what solutions do you propose?"). The responses were published in the Smyth County News & Messenger and the Saltville Progress in April, 2012.

As a result of Brickey's published responses, Hall "became very angry with [the] plaintiff" for making statements "which were critical of, and pertained to [] appropriations of certain public funds." Compl. ¶ 16. Hall advised Brickey that "he did not have the right to criticize any aspect of [t]own management when he was an employee." Compl. ¶ 17. "On May 4, 2012, Hall advised [the] plaintiff in writing [that] he was making [three] allegations against [the] plaintiff" due to the published statements, "which were critical of the members of [t]own management." Compl. ¶ 19. The plaintiff was advised on May 14, 2012 that two of the allegations would be formally processed. Defendant Hall suspended Brickey, and on May 21, 2012, Hall terminated the plaintiff, with the support of the other defendants, on the basis that the plaintiff violated the code of conduct requirements applicable to all Saltville Police Department employees.

Invoking the town's grievance procedure, on June 5, 2012, Brickey filed a written grievance regarding his termination. Prior to his grievance hearing to be held before a fact-finding panel, an investigative report was prepared regarding the allegations against the plaintiff. Brickey was denied a copy of this report, but a copy was provided to the fact-finding panel for consideration. This fact-finding panel was composed of one individual selected by the plaintiff, one individual selected by the town, and a third individual jointly selected by the first two panel members. Under a prior version of the grievance procedures, there were no restrictions on who the plaintiff could select as a panel member. However, "[p]rior to [the] plaintiff's termination,

but after he had been placed on suspension by Hall," "defendants Young, Holly, Maiden, and Dye voted to amend the [g]rievance [p]rocedure" such that these individuals would be chosen from a five-member pool pre-selected by the Town Manager, defendant Taylor. Compl. ¶ 27. During the panel hearing, defendant Hall "ordered all recording equipment to be turned off, and for all individuals present to turn off their cell phones to ensure no other recordings of the hearing could be made." Compl. ¶ 29. Following the hearing, the panel determined that the plaintiff had made public statements which reflected negatively on the town's management, and upheld his termination.

The plaintiff ultimately won the Town Council election. Since his election, the defendants have tried to limit the plaintiff's ability to serve as a council member and sought to have him impeached. Council members, including defendants Young, Maiden, and Taylor, "have refused to allow [the] plaintiff to speak on any matters involving either the budget or the [p]olice [d]epartment." Compl. ¶ 32.

In Count I of his complaint, Brickey asserts that the defendants—various employees and elected representatives of Saltville, Virginia—violated his constitutional right to liberty and free speech when they (1) terminated and/or supported the termination of his employment for publically speaking, as a private citizen, and candidate for a public office, about matters of public concern; (2) had the opportunity, under the grievance procedure, to oppose his termination but failed to do so; (3) upheld the termination of his employment; and (4) precluded him from properly performing his official duties to vote on matters before the Town Council related to budgetary matters or the police department.

In Count II, Brickey asserts that the defendants violated his procedural due process rights when they (1) refused to provide him with a copy of the investigative report prepared in advance

3

of his grievance hearing, and (2) prohibited the recording of his grievance hearing, as required by law. In Count III, he asserts that defendants Young, Holly, Maiden, and Dye violated his substantive due process rights when they amended the town's grievance procedure to allow defendant Taylor to pre-select the five possible fact-finding panel members.

The plaintiff sues all defendants in their individual capacities. He seeks compensatory damages in the amount of $300,000 per defendant for each of Counts I and II, and $300,000 per defendant Young, Holly, Maiden, and Dye for Count III. He also seeks punitive damages in the amount of $300,000 per defendant for each of Counts I and II, and $300,000 per defendant Young, Holly, Maiden, and Dye for Count III. Additionally, the plaintiff seeks attorney's fees and costs.[*]

On October 22, 2013, the defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state any claim upon which relief can be granted. The plaintiff filed a response on November 7, 2013, asking the court to deny the motion, to which the defendants replied on November 15, 2013. The court heard oral argument on the motion on December 3, 2013. The matter is now ripe for disposition.

---

[*] In his complaint, Brickey also requested "an order prohibiting any and all future violations against him in the exercise of his officially elected duties as a [t]own [c]ouncil member." However, at the hearing on the instant motion, plaintiff's counsel informed the court that Brickey no longer seeks injunctive relief.

## Discussion

### I. Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint; it does not "resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." See Butler v. United States, 702 F.3d 749, 752 (quoting Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). When ruling on the defendants' motion to dismiss, the court must accept all facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Erickson, 551 U.S. at 94. The court may also consider documents incorporated into the complaint by reference and public documents, including the Town of Saltville Personnel Rules and Regulations and the Smyth County News & Messenger and Saltville Progress newspaper articles. See Katyle, 637 F.3d at 466. However, the court need not accept as true any legal conclusion disguised as a factual allegation. Iqbal, 556 U.S. at 679–81.

The plaintiff's factual allegations need not be detailed, but he must offer more than "labels and conclusions" or a "formulaic recitation of the elements of [the] cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). These facts must "be enough to raise a right to relief above the speculative level." Id.

### II. Analysis

#### A. First Amendment Retaliatory Discharge

In Count I of his complaint, the plaintiff alleges that defendants Hall, Johnson, Maiden, Young, Holly, and Dye violated his First Amendment right to free speech when "they terminated and/or supported the termination of plaintiff's employment for publically speaking, as a private citizen, and candidate for public office, about matters of public concern." Compl. ¶ 34. He

further alleges that defendants Puckett and Taylor also violated his First Amendment right to free speech when they "had the opportunity under the grievance procedure, but refused, to oppose plaintiff's termination" and "upheld [defendant] Hall's termination of plaintiff's employment," respectively. Compl. ¶¶ 35–36.

The defendants contend that they are entitled to qualified immunity, which "shields government officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" Durham v. Jones, --- F.3d ---, 2013 WL 6439714, at *5 (4th Cir. 2013) (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." Id. (quoting Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 731 (4th Cir. 2013)). "To prevail under qualified immunity, [the defendants have] to show either that there was no constitutional violation or that the right violated was not clearly established." Id. (quoting Gregg v. Ham, 678 F.3d 333, 341 n.7 (4th Cir. 2012)).

The defendants first argue that the plaintiff has failed to allege any violation of his First Amendment rights, and second, that even if he did sufficiently allege such a violation, the right was not clearly established. Further, the defendants argue that even if the plaintiff's claim for retaliatory discharge survives assertion of the qualified immunity defense, he has not sufficiently stated that claim against all defendants. Specifically, they argue that the plaintiff's complaint fails to state a claim against defendants Puckett, Johnson, Young, Holley, Maiden, and Dye, who "merely supported the decision" to terminate the plaintiff's employment. Def.'s Mot. Dismiss 12, Docket No. 11. The court will address each issue in turn.

First, the defendants contend that it was not a violation of the plaintiff's First Amendment rights to terminate him for responding to newspaper questionnaires in a manner that violated the police department's code of conduct. The United States Court of Appeals for the Fourth Circuit recently addressed the exercise of First Amendment rights by public employees:

> We evaluate the exercise of First Amendment rights by public employees differently from their exercise by other citizens; we must balance the interests of an employee who, as a citizen, comments upon matters of public concern, on the one hand, and the interests of the governmental employer, which must maintain an effective workplace, on the other. To determine if a public employee has a cognizable First Amendment claim for retaliatory discharge, we apply a three-part test[.]
>
> First, we consider whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest. Second, even if the employee spoke upon a matter of public concern, we must determine whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in managing the working environment. And finally, if the employee's claim satisfies both of these legal criteria, the court turns to the factual question of whether the employee's speech was a substantial factor in the employee's termination decision.

Durham, 2013 WL 6439714, at *6 (internal citations and quotation marks omitted).

Here, the court finds—and the parties do not dispute—that the plaintiff has sufficiently alleged that he was speaking as a citizen upon a matter of public concern, and that his speech was a substantial factor in the decision to terminate his employment as a Saltville police officer. Compl. ¶¶ 14, 16–17, 23. Therefore, the court will discuss only the second prong of the plaintiff's retaliatory discharge claim. The Fourth Circuit, in Durham, also addressed the proper balancing of the employee's interest in speaking upon the matter of public concern against the employer's interest in managing the working environment:

> The efficient functioning of government offices is a paramount public interest. Police are the most restrictive in this regard as they are paramilitary—discipline is demanded, and freedom must be correspondingly denied. We consider a number of factors in determining the extent to which the protected speech disrupts the operation and mission of the agency.

7

> Factors relevant to this inquiry include whether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed.

Durham, 2013 WL 6439714, at *7 (internal citations and quotation marks omitted).

Here, the court cannot say that the plaintiff will be unable to show that his interest in First Amendment expression outweighed the town's interest in the efficient operation of the police department. Nothing in the complaint indicates that "his comments impaired the maintenance of discipline, hurt workplace morale, or constituted abuse of his position," Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 318 (4th Cir. 2006), or caused a reasonable apprehension of disruption within the police department. Maciariello v. Sumner, 973 F.2d 295, 300 (4th Cir. 1992); see also Conley v. Town of Elkton, No. 5:04CV00030, 2005 WL 415897, at *4 (W.D. Va. Feb. 22, 2005) (finding that the balancing test weighed in favor of the plaintiff at the motion to dismiss stage when there was no evidence that the plaintiff's statements "caused any disruption within the day-to-day operations of the police department or impeded the performance of his duties as a police officer"). Meanwhile, "[f]ew areas of free speech are more protected than political speech in the electoral process." Pierson v. Gondles, 693 F. Supp. 408, 414 (E.D. Va. 1988).

For the purposes of the defendants' motion to dismiss under Rule 12(b)(6), the plaintiff has sufficiently alleged that his interest in speaking outweighed the town's interest in the efficient operation of the police department. Accepting as true the facts alleged in the plaintiff's complaint and viewing them in the light most favorable to the plaintiff, Ridpath, 447 F.3d at 315

n.23, the court cannot say that the plaintiff will be unable to build a factual record to demonstrate that his First Amendment rights were violated.

Next, the defendants contend that even if the plaintiff has sufficiently alleged a First Amendment violation, this claim is not based on a "clearly established" constitutional right. At this stage of the proceedings, the court is constrained to disagree. The Fourth Circuit has previously recognized that "only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected." Pike v. Osborne, 301 F.3d 182, 185 (4th Cir. 2002). "[T]he relevant inquiry requires a particularized balancing that is subtle, yet difficult to apply, and not yet well defined." Id.

In Durham, however, the Fourth Circuit declared that, at least as of September 2009, "it was clearly established in the law of this Circuit . . . that an employee's speech about serious governmental misconduct, and certainly not least of all serious misconduct in a law enforcement agency, is protected." Durham, 2013 WL 6439714, at *10 (citing Andrew v. Clark, 561 F.3d 261, 269 (4th Cir. 2009)); see also id. at *9 ("We have been clear that where public employees are speaking out on government misconduct, their speech warrants protection."). Further, it was clearly established at the time of the plaintiff's termination that where an employee's public speech concerns "the corrupt misuse of public funds," it is constitutionally protected. See Robinson v. Balog, 160 F.3d 183, 185 (4th Cir. 1998).

Read in the light most favorable to Brickey, the plaintiff's comments regarding the missing D.A.R.E. funds could be considered speech concerning "serious governmental misconduct" or "the corrupt misuse of public funds":

> I am the D.A.R.E. officer for the Saltville Police Department. I teach the D.A.R.E. program at Saltville Elementary School. There are 42 students in this year's program. I went in to talk to Chief (Rob) Hall about ordering the supplies for the D.A.R.E. graduation. I was told there was no money to place the order.

9

> After checking with the accounts payable clerk to see where the $500 in the police department budget had been spent, I was shown several invoices that were charged to the D.A.R.E. account. The items on the invoices had nothing to do with the D.A.R.E. program. I also found, from looking at a copy of the budget that I obtained from the town, that the town receives $225,000 in highway maintenance funds from the state. Only $3,000 is approved in the budget for paving. Seeing this, along with the other misuse of taxpayers' money, shows me that we have a very poor management at the council level and there needs to be a change.

Pl.'s Resp. Br. Ex. F at 4–5, Docket No. 15-6; see also Pl.'s Resp. Br. Ex E, Docket No. 15-5.

Certainly, the alleged behavior in this case may be less egregious than that described in Durham, Andrew, and Balog. See Durham, 2013 WL 6439714, at *1 (officer terminated after he publicized to "numerous public officials, the media, and others" that superior officers coerced him into revising an accident report to avoid a potential damages lawsuit); Andrew, 561 F.3d at 263 (officer terminated after providing newspaper with memorandum he wrote expressing his concern regarding the police department's use of deadly force); Balog, 160 F.3d at 188 (public employee terminated after informing federal officials that department of public works was misusing public funds and operating a bid-rigging scheme). However, "[w]e do not require a case directly on point," only that "existing precedent must have placed the statutory or constitutional question beyond debate," Stanton, 134 S.Ct. at 5.

At this stage of the proceedings, the court cannot say that the plaintiff will be unable to show that the speech for which he was terminated concerned the corrupt misuse of public funds or serious governmental misconduct, such that his right was clearly established at the time of his termination. The defendants, themselves, characterize at least some portion of the plaintiff's comments as speech that "accused the chief of misconduct that was potentially criminal in nature." Def.'s Reply at 7. Therefore, the court finds that the plaintiff has alleged sufficient facts to state a claim that his clearly established First Amendment rights were violated. Thus, the

defendants are not entitled to qualified immunity at this stage of the proceedings. The defendants may pursue a motion for summary judgment based on qualified immunity if it becomes appropriate at a later time.

The final issue to be addressed is which defendants are responsible for the alleged deprivation of the plaintiff's clearly established constitutional right to free speech. The plaintiff clearly alleges that defendant Hall terminated his employment. Compl. ¶¶ 20, 23. It is unclear on the face of the plaintiff's complaint whether any other defendant had the authority to terminate the plaintiff's employment. However, the plaintiff incorporated into his complaint the Town of Saltville Personnel Rules and Regulations, which read in part:

> Organization for Personnel
> The Town Manager is designated as Personnel Officer and is responsible for personnel administration for the Town, subject to Council's approval. In the absence of the Town Manager the Mayor shall be responsible for the administration of these rules.

Pl.'s Resp. Br. Ex. A at 4, Docket No. 15-1. The Town of Saltville Personnel Rules and Regulations further state:

> It is the policy of the Town that the Town Manager function[s] as head of the Personnel Department and is accountable to the Mayor and Town Council.

Id. at 7.

Considering the facts alleged in the complaint, in conjunction with the town policy, and reading them in the light most favorable to the plaintiff, the court cannot conclude that the plaintiff will be unable to show that each defendant directly contributed to the alleged deprivation of his First Amendment right to free speech. For these reasons, the defendants' motion to dismiss Count I of the plaintiff's complaint will be denied.

B.     Procedural Due Process

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999) (citing U.S. Const. amend. XIV). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). "Only after finding the deprivation of a protected interest do we look to see if the [] procedures comport with due process." Loudermill, 470 U.S. at 541.

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" Loudermill, 470 U.S. at 541 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). This question is answered by the United States Constitution, not state or local law. See, e.g., Loudermill, 470 U.S. at 541 ("The right to due process is conferred, not by legislative grace, but by constitutional guarantee.") (internal quotation marks omitted). With regard to the termination of a public employee, the Supreme Court has held that "all the process that is due is provided by a pre-termination opportunity to respond, coupled with post-termination administrative procedures." Id. at 547–48.

When the employee is afforded adequate post-termination administrative procedures, the pre-termination hearing "need not be elaborate." Id. at 545. It need only serve as "an initial check against mistaken decisions." Id. Due process is satisfied where the employee receives

pre-termination "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546. It "does not mandate that all evidence on a charge or even the documentary evidence be provided, only that such descriptive explanation be afforded as to permit [the employee] to identify the conduct giving rise to the dismissal and thereby to enable him to make a response." Linton v. Frederick Cnty. Bd. of Comm'rs, 964 F.2d 1436, 1440 (4th Cir. 1992). Generally, post-termination administrative procedures have been found to satisfy the Due Process Clause when they provide for a hearing before a neutral party and occur without unjustified delay. See Loudermill, 470 U.S. at 547 ("The Due Process Clause requires provision of a hearing 'at a meaningful time.'") (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)); see also Garraghty v. Jordan, 830 F.3d 1295, 1302 (4th Cir. 1987) ("Even in termination cases, most courts have not required that pre-termination hearings be conducted by a neutral party so long as grievance procedures provide for a post-termination hearing before a neutral party.").

In Count II of his complaint, the plaintiff alleges that the defendants violated his procedural due process rights when they refused to provide him with a copy of the investigative report prepared for his grievance hearing. The plaintiff further alleges that defendant Hall, with the support of defendants Johnson, Young, Maiden, Holly, and Taylor, violated his procedural due process rights when he "forbid, and took deliberate actions to prohibit" the recording of the plaintiff's grievance hearing. Compl. ¶ 40. These claims are without merit.

In order to invoke the protection of the Due Process Clause, the plaintiff must first identify some constitutionally protected interest. Nowhere in his complaint does the plaintiff identify such an interest. He does not—and likely cannot—allege facts showing that he had a property interest in his position as a Saltville police officer. Under the town policy, absent a

13

written contract specifying otherwise, "[a]ll employees are employed at the will of the [t]own for an indefinite period." Pl.'s Resp. Br. Ex. A at 7, Docket No. 15-1. Likewise, he cannot allege a protected liberty interest in his position as a Saltville police officer. See Baker v. McCall, 842 F. Supp. 2d 938, 948 (W.D. Va. 2012) (explaining that the Fourteenth Amendment's "freedom to engage in any of the common occupations of life" is "not so broad as to protect an individual's right to a particular job") (internal citations and quotation marks omitted). In fact, the plaintiff expressly stated in his response brief that he "ha[d] not alleged [a] violation of his liberty rights due to his termination as a [p]olice [o]fficer," and plaintiff's counsel informed the court at oral argument that the plaintiff has been reemployed in a similar capacity. Pl.'s Resp. Br. at 8, Docket No. 15. Without alleging the deprivation of some constitutionally protected interest, the plaintiff cannot state a procedural due process claim under Rule 12(b)(6).

Even if the plaintiff could identify some constitutionally protected interest in his position as a town police officer, it is clear on the face of the plaintiff's own complaint that he received constitutionally adequate process. According to the complaint, on May 4, 2012, Brickey was advised in writing that defendant Hall planned to lodge three formal allegations against him because of statements the plaintiff had made to newspapers. Compl. ¶¶ 19, 23. On May 14, 2012, defendant Hall advised the plaintiff that two of the allegations would be formally processed. Compl. ¶ 19. Hall suspended Brickey, and advised the plaintiff that he might be terminated. Compl. ¶ 19. Although not stated in the plaintiff's complaint, both parties acknowledged during oral argument on the instant motion that a pre-disciplinary "name-clearing hearing" was held on May 17, 2012. The plaintiff was terminated on May 21, 2012 on the basis that he violated the police department's code of conduct through his responses to questionnaires from the Smyth County News & Messenger and the Saltville Progress. Compl. ¶ 20, 23.

After his termination, the plaintiff invoked the police department's formal grievance procedure by filing a written grievance. As part of this post-termination procedure, the plaintiff received a hearing before a five-member panel, of which one of the members was selected by the plaintiff, himself, from among a pool of qualified candidates. Compl. ¶ 27. Following the hearing, the panel concluded that he had, in fact, made public statements which reflected negatively on town management, and it upheld his termination. Compl. ¶ 30.

For the purposes of procedural due process, it is of no consequence that the plaintiff did not receive a copy of the investigative report, nor that the grievance hearing was not recorded, even if such a recording was required by state law. See Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 ("If state law grants more procedural rights than the Constitution would otherwise require, [] failure to abide by that law is not a federal due process issue.") The plaintiff was clearly informed of the charges against him and given an opportunity to respond. He followed the grievance procedure available to him, and he does not allege that his post-termination review was biased, unjustifiably delayed, or otherwise constitutionally deficient. It is clear that the process afforded the plaintiff in this case more than meets the constitutional requirement that a terminated public employee be given "a pre-termination opportunity to respond, coupled with post-termination administrative procedures." Loudermill, at 547–48.

Not only does Brickey fail to allege the deprivation of any constitutionally protected right, but the facts of his complaint affirmatively show that he was afforded constitutionally adequate process. Therefore, the plaintiff's claim that the defendants violated his procedural due process rights must be dismissed.

C. Substantive Due Process

"[T]he substantive due process component [of the Fourteenth Amendment due process clause] 'bars certain governmental actions regardless of the fairness of the procedures used to implement them.'" Baker v. McCall, 842 F. Supp. 2d 938, 943 (W.D. Va. 2012) (quoting Ctny. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998)). "It 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" Id. (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000)). "'Unlike rights subject to procedural due process protection, which arise from sources other than the Constitution, substantive due process rights arise solely from the Constitution.'" Id. at 944 (quoting Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1142 n.10 (4th Cir. 1990)).

"[S]ubstantive due process is a substantially narrower concept than procedural due process, for it serves as 'an absolute check on certain governmental actions notwithstanding the fairness of the procedures' used to implement those actions." Front Royal & Warren Ctny. Indus. Park Corp. v. Town of Front Royal, 135 F.3d 275, 287–88 (4th Cir. 1998) (quoting Love v. Pepersack, 47 F.3d 120, 122 (4th Cir. 1995)). "[T]his absolute check is warranted only where no process could cure the deficiencies in the governmental action." Id. at 288 (emphasis in original).

In Count III of his complaint, the plaintiff alleges that defendants Young, Holly, Maiden, and Dye—members of the Saltville town council—violated Brickey's substantive due process rights when the defendants amended the town's grievance procedure "so that the five possible [f]act-[f]inding [p]anel members were pre-selected solely by defendants, with no input being permitted from plaintiff." Compl. ¶ 42. The revised grievance procedure provided that the town manager would identify "five individuals, from whom plaintiff could select one, the [t]own could

16

select a second, and the two would agree on the designation of a third, from those pre-selected by [the town manager]." Compl. ¶ 27. Under the original grievance procedure, the panel included "one member selected by the grievant," without any limitation or restriction imposed by the town manager. Compl. ¶ 26.

The court has already determined that the plaintiff does not—and likely cannot—allege facts showing that he had a property or liberty interest in his position as a Saltville police officer. Even if the plaintiff could establish such an interest, it would be one created by state or local law, and thus, would not implicate substantive due process. See, e.g., Baker, 842 F. Supp. 2d at 945 ("[P]ublic employment is not a fundamental property interest entitled to substantive due process protection.") (quoting Nicholas v. Penn. State Univ., 227 F.3d 133, 142 (3d Cir. 2000)). To the extent that the plaintiff claims that he was entitled to a grievance procedure providing for the specific panel composition described in his complaint, Compl. ¶ 26, such a right, if it exists at all, would also be created by state or local law. There is no constitutionally-guaranteed, fundamental right to a particular post-termination grievance procedure. Therefore, the defendants' decision to amend the town's grievance procedure does not implicate the plaintiff's substantive due process rights. See Baker, 842 F. Supp. 2d at 945.

Moreover, "[i]t is well established that local legislators enjoy absolute immunity from suit for decisions made in their capacity as legislators." Front Royal & Warren Ctny. Indus. Park Corp. v. Town of Front Royal, 865 F.2d 77, 79 (4th Cir. 1989). Local legislators act in their legislative capacity when they "engage[] in the process of 'adopting prospective, legislative-type rules.'" Roberson v. Mullins, 29 F.3d 132, 135 (4th Cir. 1994). Here, the plaintiff alleges that defendants Young, Holly, Maiden, and Dye, as elected members of the town council, "voted to amend the [g]rievance [p]rocedure." Compl. ¶ 27. Amending the grievance procedure is clearly

17

a legislative action, for which the town council members are entitled to absolute immunity from suit.

Only the deprivation of Brickey's liberty interest in his "good name, reputation, honor, or integrity" in connection with his right to "engage in any of the common occupations of life" is relevant here, and the court believes that the plaintiff is unable to state such a due process claim. Roth, 408 U.S. at 572; Sciolino v. City of Newport News, Va., 480 F.3d 642, 646, 649 (4th Cir. 2007). ("A public employer who fires [] an employee in a manner that sullies the employee's good name and restricts his future employment opportunities deprives him of important liberty interests protected by the Fourteenth Amendment.") "To state this type of liberty interest claim under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Id. at 646. A public employee is not deprived of liberty when his "position is terminable at the will of the employer [and] there is no public disclosure of the reasons for the discharge." Bishop v. Wood, 426 U.S. 341, 348 (1976).

In Sciolino, a terminated probationary police officer alleged that his employer violated his Fourteenth Amendment liberty interests in his reputation and his ability to obtain future employment by placing false charges in his personnel file without granting him a name-clearing hearing. Here, unlike in Sciolino, plaintiff's counsel acknowledged at oral argument on the instant motion that Brickey received a name-clearing hearing prior to his termination. Further, the complaint contains no factual allegations that Brickey's employer publically disclosed "false, stigmatizing allegations regarding the reasons for [Brickey's] termination." Sciolino, 480 F.3d at 654. In any event, plaintiff's counsel informed the court at oral argument that since his termination from the Saltville Police Department, Brickey has found similar work with a

18

different employer.

For these reasons, the plaintiff's claim that defendants Young, Holly, Maiden, and Dye violated his substantive due process rights must be dismissed.

D.  Punitive Damages

Punitive damages are available in an action brought under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). "It is an extraordinary remedy and is designed to punish and deter particularly egregious conduct." Stephens v. S. Atl. Canners, Inc. (Coca Cola Co.), 848 F.2d 484, 489 (4th Cir. 1988).

Here, the plaintiff seeks punitive damages in the amount of $300,000 per defendant for his claim of retaliatory discharge under the First Amendment. While the plaintiff generally alleges that the "defendants' acts and omissions show a reckless and callous indifference and disregard for the plaintiff's state and federally protected rights," Compl. ¶ 45, this "formulaic recitation" alone is not sufficient to state a claim under Federal Rule of Civil Procedure 12(b)(6). Twombly, 550 U.S. at 555.

The court finds that the plaintiff's complaint fails to allege facts sufficient to support an award of punitive damages as a result of the alleged violation of his First Amendment right to free speech. The court believes that, under the facts alleged, Hall should, or could, have understood that Brickey's clearly established First Amendment rights were implicated when he suspended, and ultimately terminated, the plaintiff. However, the allegations simply do not support the notion that Hall's actions were reckless, malicious, or otherwise taken for any reason other than to enforce the police department's code of conduct. With regard to the other defendants, the plaintiff merely alleges that they either supported or failed to oppose the

plaintiff's termination. While the plaintiff may ultimately be able to show that their support or failure to oppose his termination violated his clearly established First Amendment rights, the plaintiff does not offer any facts from which the court can infer that the defendants behaved egregiously, or offered their support with "reckless or callous indifference" to his free speech rights, let alone with "evil motive or intent." Smith, 461 U.S. at 56.

For these reasons, the plaintiff's claim for punitive damages with regard to his retaliatory discharge claim will be dismissed without prejudice. The plaintiff is free to seek leave to amend his complaint if it becomes apparent that additional facts support his claim for punitive damages. The plaintiff also seeks punitive damages for his substantive and procedural due process claims. Because these claims will be dismissed, his related claims for punitive damages must also be dismissed.

## Conclusion

For the reasons stated, the defendants' motion to dismiss will be granted in part and denied in part. The plaintiff's procedural and substantive due process claims will be dismissed, along with all claims for punitive damages, and the case will continue on the claim of retaliatory discharge under the First Amendment. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 23rd day of January, 2014.

*/s/ Jay Conrad*
Chief United States District Judge