CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 02 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| RANDALL E. BRICKEY, | ) |
| | ) Civil Action No. 1:13-CV-00073 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| | ) By: Hon. Glen E. Conrad |
| ROBB HALL, et al., | ) Chief United States District Judge |
| | ) |
| Defendants. | ) |

This case arises from Plaintiff Randall Brickey's termination from the Saltville Police Department ("SPD") following the publication of Brickey's responses to questions posed to him by local newspapers during his Town Council campaign. Brickey filed this civil action under 42 U.S.C. § 1983 against several members of the SPD and the Saltville Town Council, alleging that his termination constituted a retaliatory discharge in violation of the First Amendment. The case is presently before the court on Defendants' motion for summary judgment. For the following reasons, Defendants' motion will be granted in part and denied in part.

## Statement of Facts

The following facts from the summary judgment record are either undisputed, or, where disputed, are presented in the light most favorable to Brickey. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986) (stating that all evidence must be construed in the light most favorable to the party opposing summary judgment).

Brickey served as a SPD police officer from December 1, 2006 until May 21, 2012, when he was terminated. Defendant Hall became SPD Police Chief in July 2011. As Police Chief, Hall had "the authority to hire, fire and discipline police officers" after consultation with the

Town Manager. Hall's Conditions of Hire, Def.'s Mot. Summ. J. Ex. 27, ECF 28-27.

Prior to Hall's arrival, the SPD struggled with a tarnished reputation in the Saltville community due to payroll miscalculations, officer misconduct, and a lack of professionalism. Hall implemented policy changes designed to improve SPD operations and image, including requiring officers to wear uniforms and protective vests, instituting a sleep policy, and encouraging increased foot patrols.

In early 2012, Brickey decided to run for an elected position on the Saltville Town Council. Brickey advised Police Chief Hall and Town Manager Michael Taylor of his political aspirations. Hall and Taylor agreed that Brickey's campaign would not create a conflict with his position as a police officer as long as he complied with SPD policies, including not campaigning in uniform and not disparaging the department.

During the campaign, two local newspapers, the <u>Smyth County News & Messenger</u> and the <u>Saltville Progress</u>, requested that Town Council candidates submit responses to a series of questions designed to elicit their campaign platforms. The newspapers published Brickey's responses to those questions on April 25 and 26.[1]

In the articles, Brickey stated that he had been a police officer for 23 years and that he currently served as the Saltville D.A.R.E. officer. Then, in response to a question regarding his motivation for running for Town Council, Brickey stated:

> I teach the D.A.R.E. program at Saltville Elementary School…I went in to talk to Chief Hall about ordering the supplies for the D.A.R.E. graduation. I was told there was no money to place the order. After checking with the accounts payable clerk to see where the $500 in the police department budget had been spent, I was shown several invoices that were charged to the D.A.R.E. account…[that] had nothing to do with the D.A.R.E. program… Seeing this, along with the other misuse of taxpayers' money, shows me that we have a very poor management at the council level and there needs to be a change.

---

[1] Because the First Amendment analysis turns on the "exact language" at issue, the court describes Brickey's statements in detail here. <u>Jurgenson v. Fairfax Cnty., Va.</u>, 745 F.2d 868, 880 (1984) (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 148 (1983)).

Saltville Progress Article, Def.'s Mot. Summ. J. Ex. 13, ECF No. 28-13; see also Smyth County News & Messenger Article, Def.'s Mot. Summ. J. Ex. 14, ECF No. 28-14 (same).

In response to a question asking Brickey to identify Saltville's greatest needs, Brickey stated in part that "[t]he town police department needs to be more professional. Officers need to do more foot patrols during the day shift and become more familiar with business owners. The police department needs to be more aggressive on investigations and focus more on drug trafficking." Id. When asked how he proposed to meet those needs, Brickey expanded on his ideas, stating that

> I have been told by some business owners in town during my campaign for town council that they would like to see more foot patrols from the police department, and would like to see the chief during daytime hours. I have knowledge that there is a lot of drug trafficking in Saltville, and I am aware that we have cases that need to be investigated by the police department. We have a Chief of Police, an assistant chief, and four full-time officers and a part-time officer. There is no reason why we can't have a full-time investigator in the department. I propose that the town [put] the assistant chief back on patrol and take one of the full-time patrol officers and put them on investigations. At least we would have someone working on investigations full time that could possibly work on our drug problems. We had an investigator in our police department for over twenty years…There is no reason why we can't have an investigator now.

Id. In the articles, Brickey also stated that he believed that more money should be spent on road maintenance and paving, that the Town Council held too many closed meetings, that town departments needed to create and maintain balanced budgets, and that the town needed to provide water customers with longer periods of time to pay past due accounts and give notice to those customers before disconnecting services. Id.

Police Chief Hall felt "singled out" by Brickey's statements and believed that Brickey's published comments violated SPD policy. See Hall Decl. ¶ 25, Def.'s Mot. Summ. J. Ex. 1, ECF 28-1. On May 4, Hall gave Brickey written notice of his allegations that Brickey's statements

violated several provisions of the SPD Policy Manual.[2] Hall then hired Dr. Gary Reynolds, a former police chief from Winchester, Virginia, to investigate these allegations.

Meanwhile, on May 8, Hall briefed the Town Council in a closed meeting about the ongoing investigation into Brickey's alleged violations of SPD policy. Hall advised the Council that he had not decided what disciplinary action would be taken and that he would not make any decisions regarding discipline until after the investigation concluded. At the close of this meeting, the Council voted to support Hall's decision regarding potential discipline of Brickey, including his termination.[3]

Dr. Reynolds met with several witnesses during his investigation, including Brickey, Hall, Assistant Police Chief Erik Puckett, all five of the town's other police officers, and the town's auditor. Reynolds asked each witness about Brickey's published statements and the impact of those statements on the SPD.[4] At the conclusion of his investigation, Reynolds determined that Brickey's published statements violated SPD policy by "bad-mouthing" Hall, undermining the public's trust in Hall, and "sending a message that there were no drug investigations being conducted by the [SPD],…contrary to good public policy." Inv. Report, Def.'s Mot. Summ. J. Ex. 19, ECF 28-19. Reynolds forwarded a copy of his Investigative Report to Hall on May 12.

Hall informed Brickey of the results of the Investigative Report in writing on May 14.

---

[2] These policies included requirements that police officers "display respect for their superior officers"; "not gossip or speak rumors detrimental to the department or another employee"; "not use or attempt to use their official position…for personal or financial gain"; "not communicate…any information concerning operations, activities, or matters of police business…which may have an adverse impact on the department's image, operations, or administration"; "not criticize or ridicule the Department, its policies, or other employees…where such speech…undermines the effectiveness of the Department, interferes with the maintenance of discipline, or is made with reckless disregard for truth or falsity"; and "not prepare any articles for publication…while presenting them as representing the Department in such matters, without the authority of the Chief of Police." SPD Policy Manual §2-2, Def.'s Mot. Summ. J. Ex. 17, ECF 28-17.

[3] The motion carried 3-1-1, with Councilmen Maiden, Holley, and Dye voting yes, Councilman Norris abstaining, and Councilman Young voting no. Mayor Neil Johnson did not participate in the vote.

Hall, Puckett, Reynolds, and Brickey met for a pre-disciplinary hearing on May 17, at which time Reynolds reviewed his findings with Brickey and provided him the opportunity to respond. On May 21, after consulting with Taylor, Hall terminated Brickey's employment. Brickey pursued the SPD's grievance procedures to challenge his termination, but none of the parties involved reversed Hall's decision.

Brickey was elected to Town Council starting July 1, 2012.

## Procedural History

Brickey commenced this § 1983 action on September 18, 2013. In his complaint, Brickey named Police Chief Hall, Assistant Police Chief Erik Puckett, Town Manager Michael Taylor, Mayor Neil Johnson, and Town Council members Todd Young, Tom Holley, Vincent Maiden, and Dickie Dye as defendants. Brickey asserts that these defendants violated his right to free speech under the First Amendment, as well as his procedural and substantive due process rights under the Fourteenth Amendment. Brickey seeks compensatory and punitive damages. As he is now employed elsewhere, Brickey does not seek reinstatement.

Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on October 22, 2013. By opinion and order entered January 23, 2014, that motion was granted in part and denied in part. The court dismissed Brickey's substantive and procedural due process claims, as well as his claims for punitive damages. However, the court found that Brickey had adequately alleged a claim of retaliatory discharge in violation of the First Amendment, and allowed the case to proceed on that ground alone.

On July 30, 2014, defendants moved for summary judgment as to Brickey's remaining First Amendment claim. The court held a hearing on the motion on August 22, 2014, and the

---

[4] The Report reflects that at least two of the SPD officers had not read the newspaper articles containing Brickey's comments prior to Reynolds's interview.

motion is now ripe for review.

## Standard of Review

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor. Id. at 255; see also Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

Brickey filed suit under §1983, which imposes civil liability for constitutional violations committed under color of state law. Specifically, Brickey claims that he was fired in retaliation for his answers to questions posed to him by local newspapers, in violation of his First Amendment right to free speech. In moving for summary judgment, Defendants contend that Brickey's free speech claim fails on the merits, and, alternatively, that they are entitled to qualified immunity. Defendants also argue that Brickey has failed to adequately state a claim for retaliatory discharge against Defendants other than Police Chief Hall. The court will address each of these arguments in turn.

### I. *First Amendment Claim*

"The First Amendment protects not only the affirmative right to speak, but also the 'right to be free from retaliation by a public official for the exercise of that right.'" Adams v. Univ. of

N.C.-Wilmington, 640 F.3d 550, 560 (4th Cir. 2011) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000)). "[P]ublic employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). However, the government, "as an employer, undoubtedly possesses greater authority to restrict the speech of its employees than it has as a sovereign to restrict the speech of the citizenry as a whole." Urofsky v. Gilmore, 216 F.3d 401, 406 (4th Cir. 2000).

Courts must therefore balance "'the interests of the [employee], as a citizen, in commenting upon matters of public concern, and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Adams, 640 F.3d at 560 (quoting Connick v. Myers, 461 U.S. 138, 142 (1983)). When considering a retaliatory discharge claim, courts weigh these competing interests by asking three questions:

> (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's protected speech was a substantial factor in the employee's adverse employment decision.

Id. at 560-61 (quoting McVey v. Stacy, 157 F.3d 271, 277-78 (4th Cir. 1998)). Defendants have not disputed that Brickey's termination resulted from his published statements, so the court need only consider the first two questions.

The first question tasks the court with determining whether Brickey was speaking as a citizen on a matter of public concern. See Garcetti, 547 U.S. at 419-21. "Whether the speech fairly relates to an issue of public concern is a question of law." Hall v. Marion School Dist. No. 2, 31 F.3d 183, 192 (4th Cir. 1994). Courts look to the "content, form, and context of a given

statement" to determine whether it addresses a matter of public concern. Connick, 461 U.S. at 147-48.

"Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." Kirby v. City of Elizabeth City, 388 F.3d 440, 446 (4th Cir. 2004). "Speech concerning public affairs…is the essence of self-government." Garrison v. Louisiana, 379 U.S. 64, 74-75 (1964). Therefore, "the court is especially sensitive to safeguarding participation in campaigns since 'political elections…are absolutely dependent upon the free exchange of ideas that lies at the core of the First Amendment.'" Pierson v. Gondles, 693 F. Supp. 408, 412 (E.D. Va. 1988) (quoting Garrison, 379 U.S. at 74-75); see also Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 329 (2010) (describing political speech as "central to the meaning and purpose of the First Amendment").

Speech that "'seeks[s] to bring to light actual or potential wrongdoing or breach of public trust'" also necessarily implicates matters of public concern. Jurgensen v. Fairfax Co., Va., 745 F.2d 868, 879 (4th Cir. 1984) (quoting Connick, 461 U.S. 138, 148 (1983)). On the other hand, "personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern, but are matters more immediately concerned with the self-interest of the speaker as employee." Stroman v. Colleton Cnty. Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1992). Courts must "analyze carefully the exact language [at issue] in order to determine whether it qualifies as a matter of 'public interest' beyond 'a most limited sense.'" Jurgenson, 745 F.2d at 880 (quoting Connick, 461 U.S. at 148).

In this case, the "content, form, and context" of at least some of Brickey's published statements demonstrate that he was speaking on a matter of public concern. Connick, 461 U.S.

at 147-48. Brickey's published comments were made in response to specific questions posed by local newspapers in the context of the Town Council election. The content of Brickey's answers focused on what he perceived as Saltville's "greatest needs" and how he would strive to meet those needs if elected to Town Council. Specifically, Brickey's comments regarding police professionalism and drug investigations implicate public safety and government efficiency – issues that would undoubtedly concern Saltville voters. In fact, these issues were already matters of public debate well before Brickey's statements were published in the local newspapers.

"Even when speech is about a topic of public concern, public employees who make statements 'pursuant to their official duties' are not speaking as citizens for First Amendment purposes and their speech does not warrant constitutional protection." Hunter v. Town of Mocksville, N.C., No. 1:12-CV-333, 2013 WL 5726316, at *6 (M.D.N.C. Jan. 22, 2014) (quoting Garcetti, 547 U.S. at 421). There is no evidence in the record to suggest that Brickey acted pursuant to his duties as an SPD police officer when he made his comments to the local newspapers. On the contrary, Brickey was interviewed specifically as a Town Council candidate. The court is not persuaded by Defendants' argument that Brickey did not speak as a private citizen simply because his comments were informed in part by knowledge gained in his professional capacity. See Garcetti, 547 U.S. at 419 ("The [Supreme] Court has acknowledged the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion."); Waters v. Churchill, 511 U.S. 661, 674 (1994) ("Government employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions."); Durham v. Jones, 737 F.3d 291, 300-301 (4th Cir. 2013) (finding that the speech of a police officer who was an "insider...uniquely positioned to have knowledge" of police department practices is

protected).

In sum, the court holds that, as a matter of law, Brickey's published comments regarding police professionalism and drug investigations were made by him as a private citizen speaking on a matter of public concern. Those comments deserve First Amendment protection.

The court must next consider whether Brickey's free speech interest is outweighed by the SPD's interest in providing efficient and effective law enforcement services. See Adams, 640 F.3d at 560-61. This balancing test requires the court "to consider the context in which the speech was made, including the employee's role and the extent to which the speech impairs the efficiency of the workplace." Smith v. Gilchrist, 749 F.3d 302, 309 (4th Cir. 2014) (citing Rankin v. McPherson, 483 U.S. 378, 388 (1987)). Factors relevant to this analysis include

> [w]hether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the [agency]; (6) undermined the mission of the [agency]; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the [agency]; and (9) abused the authority and public accountability that the employee's role entailed.

Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 317 (4th Cir. 2006). In balancing the competing interests, courts "do not require the public employer to prove that the employee's speech actually disrupted efficiency, but only that an adverse effect was 'reasonably to be apprehended.'" Maciariello v. Sumner, 973 F.2d 295, 300 (4th Cir. 1992) (quoting Jurgensen, 745 F.2d at 879).

"The efficient functioning of government offices is a paramount public interest. Police are most restrictive in this regard as they are paramilitary – discipline is demanded, and freedom must be correspondingly denied." Durham v. Jones, 737 F.3d 291, 301 (4th Cir. 2013) (internal quotation marks and citations omitted). Issues of "particular importance" to law enforcement

"include 'discipline and harmony in the workplace, confidentiality, protection from false accusations that may prove difficult to counter given the employee's supposed access to inside information…and protection of close working relationships that require loyalty and confidence.'" Pierson, 693 F. Supp. at 413 (quoting Piver v. Pender Cnty. Bd. of Educ., 835 F.2d 1076, 1081 (4th Cir. 1987)).

Defendants contend that Brickey's published comments negatively impacted morale and discipline within the SPD, set back Hall's efforts to improve the SPD's reputation in the community, and possibly "communicated to criminals that Saltville was a good place to deal drugs." Def.'s Mot. Summ. J. 7, ECF 28. Defendants' affidavits aver generally that "several Saltville police officers" and "members of the community" expressed concerns about Brickey's comments, and that those comments "severely impacted morale" and "undermined [Hall's] authority." Hall Decl. ¶¶ 23-27, Def.'s Mot. Summ. J. Ex. 1, ECF 28-1; see also Taylor Decl. ¶¶ 9-12, Def.'s Mot. Summ. J. Ex. 5, ECF 28-5 (same); Puckett Decl. ¶¶ 14-15, Def.'s Mot. Summ J. Ex. 4, ECF 28-4 (same). Hall also states in his affidavit that he believed Brickey "deliberately singled [him] out." Hall Decl. ¶ 25.

The record also reflects, however, that the information contained in Brickey's statements was already public knowledge in Saltville. SPD's professionalism and image were already subjects of public concern before Hall became Police Chief in July 2011, less than a year before Brickey's comments were published. See Hall Decl. ¶¶ 3, 10, Def.'s Mot. Summ. J. Ex. 1, ECF 28-1. Saltville's drug problems were also public knowledge prior to Brickey's statements. In fact, the same Smyth County News & Messenger issue containing Brickey's comments also includes an article on Saltville's "Drug Take-Back Day" in which Hall states that Saltville has "a major problem with prescription drug abuse." Smyth County News & Messenger Article, Def.'s

Mot. Summ. J. Ex. 14, ECF No. 28-14. Any concerned citizen could have also determined from public records that the SPD did not employ a full-time drug investigator. Furthermore, some of the SPD officers interviewed by Reynolds during Brickey's disciplinary investigation had not even read the articles before their interviews, and none appear to question Hall's authority or discipline. See Inv. Report, Def.'s Mot. Summ. J. Ex. 19, ECF 28-19.

Defendants are not required to demonstrate an actual disruption in efficiency to satisfy the balancing test, but there must be at least a "reasonable apprehension" of disruption. Maciariello, 973 F.2d at 300. That disruption must also "outweigh the importance of the speech and its concern to the public." See Durham, 737 F.3d at 302 (citing Connick, 461 U.S. at 152). The court concludes that any actual or threatened disruption to the SPD's efficiency fails to outweigh Brickey's substantial interest in speaking freely on matters of public concern, particularly in the political realm. See Bland v. Roberts, 730 F.3d 368, 387 (4th Cir. 2013) (stating that "political speech…is entitled to the highest level of protection").

## II. *Qualified Immunity*

Defendants claim that even if Brickey's termination violated his First Amendment rights, they are nonetheless entitled to qualified immunity. "Qualified immunity shields government officials performing discretionary functions from personal capacity liability for civil damages under § 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (quoting Wilson v. Lane, 526 U.S. 603, 609 (1999)). "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 731 (4th Cir. 2013).

A government official is entitled to qualified immunity unless (1) the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right, and (2) the right violated was "clearly established." Henry v. Purnell, 501 F.3d 374, 376-77 (4th Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To be clearly established, "the contours of the right must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999) (quotation marks omitted).

Applying these principles, the court concludes that Defendants are not entitled to qualified immunity in this case. The court has already determined that, when taking the record in the light most favorable to Brickey, his termination constituted a retaliatory discharge in violation of his constitutional right to speak freely on matters of public concern. Brickey's ability to speak as a concerned citizen and political candidate without retaliation was also "clearly established" when Brickey was terminated in May 2012. The Supreme Court has repeatedly recognized that political speech is "central to the meaning and purpose of the First Amendment," and is therefore deserving of the highest level of constitutional protection. Citizens United, 558 U.S. at 329; see also McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346 (1995) ("Discussion of public issues and debate on the qualifications of candidates are integral to the operations of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression"). The Fourth Circuit has also "been clear that where public employees are speaking out on government misconduct, their speech warrants protection." Durham v. Jones, 737 F.3d 291, 303-04 (4th Cir. 2013).

In this case, Brickey spoke in response to questions posed to him by local newspapers as part of his political campaign. Brickey's answers to those questions focused on how he would

meet the needs of Saltville citizens if elected to a Council position. At least in part, his statements dealt with matters that were already subject to public concern and debate. His comments also addressed government conduct and proper priorities within the SPD and Town Council, including the failure to aggressively investigate crime. That these issues may seem minor in comparison to issues disputed in state or national politics does not derogate their importance within the Saltville political arena or render them any less deserving of constitutional protection.

In May 2012, it was clearly established that the First Amendment protects both political speech and speech concerning government misconduct. Defendants' qualified immunity argument thus fails.

### III. *Claims Against Defendants other than Hall*

To succeed with an individual capacity suit under § 1983, a plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Brickey claims that his May 21, 2012 termination constituted a retaliatory discharge in violation of the First Amendment. The undisputed record shows that Defendant Hall had the power to hire and fire police officers, and that Hall made the decision to terminate Brickey. Although the other Defendants appear to have supported Hall's decision, no evidence in the record suggests that they "caused" Brickey's termination or had the authority to do so. Brickey therefore fails to state a valid claim for individual capacity liability under § 1983 against Defendants other than Hall, and those Defendants will be dismissed.

### Conclusion

For the reasons stated, Defendants' motion for summary judgment will be granted in part and denied in part. Defendants Puckett, Taylor, Johnson, Young, Holley, Maiden, and Dye will

be dismissed from the case and the case will proceed to trial against Defendant Hall only. As indicated in the court's pre-trial order, issues of liability and damages will be bifurcated. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This 2d day of September, 2014.

_____
Chief United States District Judge